UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

------------------------------------------------------

JAMES ROGER BRADLEY,

           Plaintiffs,

      v.

THE STATE OF LOUISIANA, through the
Louisiana Department of Public Safety and
Corrections; and
MICHAEL D. EDMONSON, in his official
capacity as the Deputy Secretary,

           Defendants.

------------------------------------------------------

**COMPLAINT**

**JURY TRIAL DEMANDED**

## COMPLAINT

"I now lift my pen to sign this Americans with Disabilities Act and say: Let the shameful wall of exclusion finally come tumbling down. God bless you all."

- President George H. W. Bush, July 26, 1990

THE BIZER LAW FIRM

Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Marc P. Florman (LA # 35128)
mflorman@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

1.      Plaintiff JAMES ROGER BRADLEY (herein after "MR. BRADLEY") is a deaf individual who communicates primarily in American Sign Language ("ASL"), which is his expressed, preferred, and most effective means of communication. MR. BRADLEY was arrested in 2000 and convicted of a felony in 2002. MR. BRADLEY was imprisoned until 2016. MR. BRADLEY was released in September of 2016, and as a condition of his release MR. BRADLEY is obligated to meet with a parole officer. THE STATE OF LOUISIANA, Through the Department of Public Safety and Corrections (hereinafter "THE STATE OF LOUISIANA") and MICHAEL D. EDMONSON, in his official capacity as the Deputy Secretary, (collectively "DEFENDANTS") have repeatedly discriminated against MR. BRADLEY by failing and/or refusing to provide auxiliary aids and services necessary to ensure effective communication with MR. BRADLEY regarding complex legal matters. As a result, MR. BRADLEY has been unable to meaningfully engage in the probation services required by THE STATE OF LOUISIANA. Due to the discrimination he has suffered, MR. BRADLEY has suffered loss of freedom of movement and invasion of his civil rights. MR. BRADLEY seeks declaratory, injunctive, and equitable relief; compensatory damages (including nominal damages); and attorneys' fees and costs to redress DEFENDANTS' unlawful discrimination on the basis of disability in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq.; and Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794.

## THE PARTIES

2.      Plaintiff MR. BRADLEY is an individual residing at 11488 St. Lawrence Dr., Baton Rouge, LA, 70811, a private home in Baton Rouge, Louisiana. MR. BRADLEY is profoundly deaf and communicates primarily in American Sign Language. Additionally, MR. BRADLEY has substantial vision loss and he can only read very large text using a power magnifying glass that has approximately 10-11 times magnification capabilities. He is substantially limited in the major life activities of hearing,

speaking, and seeing, and is a qualified person with a disability within the meaning of the ADA and the Rehabilitation Act.

3.      THE STATE OF LOUISIANA, Through the Louisiana Department of Public Safety and Corrections is a state government.

4.      MICHAEL D. EDMONSON is the Deputy Secretary of the Department of Public Safety and Corrections and is sued in his official capacity for declaratory, injunctive, and equitable relief and attorneys' fees/costs pursuant to the ADA and the Rehabilitation Act pursuant to the doctrine of *Ex parte Young*.

5.      As the operator and administrator of the probation services discussed below, the STATE OF LOUISIANA and MICHAEL D. EDMONSON are obligated to comply with the requirements of the ADA.

6.      DEFENDANTS are jointly obligated to comply with the requirements of the ADA.

**JURISDICTION & VENUE**

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiffs' claims arising under federal law.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because DEFENDANTS reside within the jurisdiction of this District, and/or a substantial part of the events that give rise to the claims occurred in this District, and/or DEFENDANTS have sufficient contacts with this District to subject them to personal jurisdiction at the time this action is commenced.

**STATEMENT OF FACTS**

9.      MR. BRADLEY is profoundly deaf and communicates primarily in American Sign Language (ASL).

10.     MR. BRADLEY requires auxiliary aids and services to communicate effectively

regarding legal matters.

11.    MR. BRADLEY has poor vision and can only read very large text using a power magnifying glass that has approximately 10-11 times magnification capabilities.

12.    On September 2, 2016, MR. BRADLEY was released from prison and moved into the "Dark House," a transitional house with eleven other people.

13.    Upon release, MR. BRADLEY was not given a translator or other auxiliary aid to assist him with determining how he would attend his probation service. MR. BRADLEY was not given any information in large-text written format.

14.    On September 6, 2016, MR. BRADLEY visited the parole office to learn when he was obligated to meet with his parole officer. MR. BRADLEY requested a sign language interpreter, but none was provided. Instead, the STATE OF LOUISIANA attempted to communicate with MR. BRADLEY by hand writing notes back and forth. The hand written notes were not enlarged for MR. BRADLEY and MR. BRADLEY misunderstood much of what was written due to DEFENDANTS' failure to provide effective auxiliary aids.

15.    On September 7, 2016, MR. BRADLEY visited the parole office to check in and learn when he was obligated to meet with his parole officer. MR. BRADLEY was provided some paperwork to learn the name of his parole officer. MR. BRADLEY was not given an interpreter.  The font on the intake paperwork was not enlarged for MR. BRADLEY.

16.    Through a roommate, MR. BRADLEY learned that he needed to call a phone number on Friday, September 9, 2016, to determine the name and contact information of his parole officer.

17.    During the September 7, 2016 visit, MR. BRADLEY asked for an interpreter, and the lady at the front desk responded "No."

18.    Due to the small font size, MR. BRADLEY could not read much of the paperwork and

handwritten notes provided during his September 7, 2016 meeting. DEFENDANTS' attempt to communicate through lip reading and small, handwritten notes were not sufficient to accommodate MR. BRADLEY's disability

19.    On September 9, 2016, MR. BRADLEY, with the assistance of a roommate who does not know ASL, attempted to call the phone number provided on September 7, 2016. MR. BRADLEY made approximately three to five attempts to call the phone number. MR. BRADLEY was unable to navigate through the computer prompts due to his disability. Due to the communication difficulties, MR. BRADLEY was unable to learn the name and contact information of his parole officer.

20.    On September 12, 2016, MR. BRADLEY returned to the parole office and asked for an interpreter. No interpreter was provided. At the parole office, MR. BRADLEY was given a slip of paper which stated "your officer is Jennifer Bush Do you need to see her". The hand writing was not in large font and was difficult for MR. BRADLEY to read. Additionally, the slip of paper did not provide a phone number.

21.    On September 19, 2016, MR. BRADLEY was provided with a business card for his parole officer, Jennifer Bush. On the back of the card, in small font, was the following text "225-XXX-XXXX James, you may text me."[1]

22.    On September 19, 2016, MR. BRADLEY texted his Parole Officer Ms. Bush, during which the following exchange occurred:

> Bradley: "…Will meet u wed am per u note. I will need interpitor"
> Bush: "I can write everything if you can't find one"
> Bradley: "I need an interpitor p&p not have one? Not required to?"
> Bush: "No, guess I could contact one of the prisons for an interpreter over teleconference,
>      but probably won't get it by Wednesday" (the day of their initial meeting)
> Bush: "Did you have an official interpreter or friend come with you after release?"
> Bradley: "I can't see prisons or person on TV. HV low vision in 1 eye. Other not good.
>      Must be close. am confused about this"
> Bush: "Would me writing things down help?"

---

[1] The remainder of the cell phone number has been redacted for the privacy of Ms. Bush.

Bradley: "We can try but"
Bush "We'll try and if it doesn't work we'll figure something out"

23.     As can be seen by this exchange, MR. BRADLEY made a specific reasonable accommodation request for an interpreter, which was rejected by parole officer Bush.

24.     As can be seen by the above exchange, MR. BRADLEY made it known to Ms. Bush that he had low vision and would have great difficulty communicating through handwritten notes.

25.     On September 21, 2016, MR. BRADLEY met with parole officer Bush. During that meeting, Ms. Bush did not bring an interpreter. Instead, Ms. Bus attempted to communicate with MR. BRADLEY by writing notes back and forth and lip reading.

26.     During the September 21, 2016 meeting, MR. BRADLEY asked for an interpreter and this request was denied.

27.     Due to his vision loss, MR. BRADLEY had extreme difficulty communicating with Ms. Bush and understanding the terms of his probation or the restrictions on his activities and movement.

28.     On September 26, 2016, MR. BRADLEY met with Ms. Bush at the Dark House. Ms. Bush did not bring an interpreter. Instead, Ms. Bush tried to communicate with MR. BRADLEY via writing, lip reading, and loud yelling.

29.     Due to his vision loss, MR. BRADLEY had extreme difficulty communicating with Ms. Bush and understanding the terms of his probation or the restrictions on his activities and movement.

30.     MR. BRADLEY is a veteran and is interested in attending events at the Veterans of Foreign Wars and the American Legion.

31.     During the September 26, 2016 meeting, MR. BRADLEY wanted to ask Ms. Bush if he could be around alcohol and bars while attending events at the Veterans of Foreign War and the American Legion.

32.     MR. BRADLEY does not desire to consume alcohol at events hosted by the Veterans of

Foreign War and the American Legion, but he is afraid that if he attends those events he might unintentionally violate the terms of his parole and be sent back to prison.

33.     During the September 26, 2016 meeting, MR. BRADLEY believes that Ms. Bush might have attempted to communicate to him that he was permitted to attend events at the Veterans of Foreign War and the American Legion. However, due to the communication barrier, MR. BRADELY is not confident that he understood the terms of his probation.

34.     Additionally, during the September 26, 2016 meeting, due to DEFENDANTS' failure to provide an interpreter, MR. BRADLEY was not able request documentation or pamphlets showing that he is allowed to attend events hosted by the Veterans of Foreign War and the American Legion under the terms of his probation.

35.     Given MR. BRADLEY's inability to communicate with Ms. Bush and understand the terms and conditions of his probation, he has been forced to avoid all events hosted by the Veterans of Foreign Wars and the American Legion out of fear of an unintentional violation of the terms of his probation.

36.     Additionally, MR. BRADLEY desired to attend a deaf rights rally in Baton Rouge on September 29, 2016. Due to the communication difficulties, MR. BRADLEY was concerned that the terms or conditions of his probation would not allow him to attend the deaf rights rally. Due to DEFENDANTS' failure to provide an interpreter, MR. BRADLEY was not able request documentation or pamphlets showing that attending the deaf rights rally would not constitute a violation of the terms of his parole.

37.     On September 29, 2016, out of concern that attendance at the deaf rights rally could constitute a technical violation of the terms of his parole, MR. BRADLEY chose not to attend the deaf rights rally.

38.     Since the September 26, 2016 meeting, MR. BRADLEY has met with Ms. Bush on at least three additional occasions. On each occasion, Ms. Bush has not provided an interpreter or an alternative auxiliary aid such as Video Remote Interpreting (VRI). Instead, Ms. Bush has attempted to communicate merely through lip reading and/or hand writing notes back and forth.

39.     On or about October 4, 2016, Ms. Bush visited MR. BRADLEY for a parole visit. During this visit, Ms. Bush did not bring an interpreter or an alternative auxiliary aid such as VRI. Instead, Ms. Bush attempted to communicate with MR. BRADLEY by exchanging hand written notes and lip reading.

40.     During the October 4, 2016 visit, Ms. Bush dropped off paperwork for MR. BRADLEY to complete to obtain a new State of Louisiana identification card. The font on the paperwork was not enlarged to accommodate MR. BRADLEY's vision loss.

41.     On or about October 7, 2016, MR. BRADLEY again sent Ms. Bush a text message conveying the need for an interpreter. Despite this, DEFENDANTS have continued to fail to provider an interpreter or other auxiliary aid to MR. BRADLEY.

42.     On or about October 10, 2016, MR. BRADLEY visited the parole office to pick up some clothing and drop off the paperwork to obtain his State of Louisiana identification card. During this meeting, MR. BRADLEY was not provided with an interpreter or other auxiliary aid such as VRI.

43.     Upon information and belief, DEFENDANTS have the ability to provide MR. BRADLEY with paperwork in enlarged font. For example, DEFENDANTS have enlarged MR. BRADLEY's monthly reports. The enlarged font on the monthly reports allows MR. BRADLEY to more effectively understand the information DEFENDANTS are attempting to convey to him.

44.     Due to DEFENDANTS' failure to provide an interpreter, MR. BRADLEY has suffered invasion of his civil rights and lack of the freedom of movement. Additionally, MR. BRADLEY has

been and is actively being denied the ability to interact with other members of the community.

45.    DEFENDANTS, through Ms. Bush, were aware that MR. BRADLEY is deaf and requires a sign language interpreter to effectively communicate.

46.    Upon information and belief, the assigned probation officer is required to explain the terms and conditions of probation to the probationer during their first meeting.

47.    Upon information and belief, Ms. Bush routinely explains the terms and conditions of probation to her hearing probationers during her first meeting with them.

48.    Upon information and belief, probation officer Bush never utilized an ASL interpreter to explain the terms and conditions of probation to MR. BRADLEY at any time.

49.    Upon information and belief, DEFENDANTS were aware of MR. BRADLEY's obvious disability, as both MR. BRADLEY brought it to DEFENDANTS' attention.

50.    DEFENDANTS' staff failed to undertake any meaningful assessment of MR. BRADLEY's communication needs and abilities.

51.    Parole officer Bush ignored MR. BRADLEY's request regarding his communication needs and abilities and actually told MR. BRADLEY that the State was under no obligation to provide a sign language interpreter.

52.    DEFENDANTS often forced MR. BRADLEY to attempt to communicate through either lip-reading or reading or hand writing in English, which are not effective modes of communication for MR. BRADLEY in a legal setting.

53.    DEFENDANTS often forced MR. BRADLEY to attempt to read text which was not enlarged to accommodate his vision loss.

54.    DEFENDANTS did not take into consideration the fact that MR. BRADLEY, who communicates primarily in ASL, has vision loss which makes reading anything but large font difficult or

impossible for MR. BRADLEY.

55.    As a result of DEFENDANTS' failure to ensure effective communication with MR. BRADLEY, he received services that were objectively substandard and that were inferior to those provided to probationers who are hearing and was subjected to discriminatory treatment because of his disability.

56.    DEFENDANTS intentionally discriminated against MR. BRADLEY; additionally, DEFENDANTS intentionally discriminated against MR. BRADLEY with deliberate indifference to his rights and to MR. BRADLEY's communication needs; DEFENDANTS' discrimination has caused MR. BRADLEY invasion of his civil rights and to endure loss of liberty, humiliation, fear, anxiety, isolation, guilt, and emotional distress.

## CLAIM 1: VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT

57.    MR. BRADLEY repeats and realleges all preceding paragraphs in support of this claim.

58.    At all times relevant to this action, Title II of the ADA, 42 U.S.C. § 12131, et seq. has been in full force and effect and has applied to DEFENDANTS' conduct.

59.    At all times relevant to this action, the United States Department of Justice regulations implementing Title II of the ADA, 28 C.F.R. Part 35, have been in full force and effect and have applied to DEFENDANTS' conduct.

60.    At all times relevant to this action, Plaintiff MR. BRADLEY has been substantially limited in the major life activities of hearing, speaking, and seeing, and is an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2).

61.    THE STATE OF LOUISIANA is a public entities within the meaning of Title II of the ADA, 42 U.S.C. § 12131(1).

62.    Title II of the ADA provides that "no qualified individual with a disability shall, by

reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

63.    Federal regulations implementing Title II of the ADA provide that a public entity may not "(i) deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service; (ii) afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others; [or] (iii) provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." 28 C.F.R. § 35.130(b)(1).

64.    Federal regulations implementing Title II of the ADA further provide that "a public entity shall operate each service, program, or activity so that the service, program or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a).

65.    Federal regulations implementing Title II of the ADA further provide that a public entity "shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1).

66.    Federal regulations implementing Title II of the ADA further provide that a public entity "shall furnish appropriate auxiliary aids and services where necessary," and "in order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b).

67.    DEFENDANTS discriminated against MR. BRADLEY, on the basis of disability, in

violation of Title II of the ADA and its implementing regulations.

68.    MR. BRADLEY is therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs (including expert expenses), and damages (including nominal damages) pursuant to Title II of the ADA.

## CLAIM 2: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

69.    MR. BRADLEY repeats and realleges all preceding paragraphs in support of this claim.

70.    At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, has been in full force and effect and has applied to DEFENDANTS' conduct.

71.    At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to DEFENDANTS' conduct.

72.    At all times relevant to this action, MR. BRADLEY has had substantial limitations to the major life activities of hearing, speaking, and seeing and has been an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

73.    At all times relevant to this action, DEFENDANTS' have been offering programs, services, activities, or accommodations receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

74.    Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

75.    The Rehabilitation Act extends relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2).

76.    DEFENDANTS discriminated against MR. BRADLEY, on the basis of disability, in violation of 29 U.S.C. § 794.

77.    MR. BRADLEY is therefore entitled to seek and recover compensatory damages (including nominal damages) for the injuries and loss he sustained as a result of DEFENDANTS' discriminatory conduct as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

78.    MR. BRADLEY is further entitled to injunctive relief, as well as an award of attorneys' fees, and costs (including expert expenses) pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

## PRAYER FOR RELIEF

**WHEREFORE,** MR. BRADLEY respectfully prays that this Court grant the following relief:

a.    Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that DEFENDANTS' policies, procedures, and practices have subjected MR. BRADLEY to unlawful discrimination in violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act;

b.    Issue an injunction forbidding DEFENDANTS from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals, or their companions, meaningful access to and full and equal enjoyment of DEFENDANTS' facilities, services or programs;

c.    Issue an injunction ordering DEFENDANTS:

i. to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against MR. BRADLEY or other deaf or hard of hearing individuals and their companions by failing to provide effective communication;

ii.  to develop, implement, promulgate, and comply with a policy requiring that a certified in-person legal ASL interpreter be provided to all deaf or hard of hearing individuals for effective communication in all services offered by DEFENDANTS;

iii.  to develop and implement a new system, or integrate into a currently existing system a means of identifying parolees as Deaf, Deaf Blind, Deaf Disabled, Hard of Hearing, and other persons with other disabilities;

iv.  to create and maintain a list of sign language interpreters and ensure availability of such interpreters at any time of day or night;

v.  to train all its employees, staffs, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA and the RA;

d.  Award to MR. BRADLEY:

i.  Compensatory damages (including nominal damages) from the STATE OF LOUISIANA pursuant to the ADA and the RA;

ii.  Reasonable costs (expert expenses) and attorneys' fees pursuant to the ADA and the RA;

iii.  Interest on all amounts at the highest rates and from the earliest dates allowed by law;

iv.  Any and all other relief that this Court finds necessary and appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

Dated: November 9, 2016

Respectfully Submitted,

THE BIZER LAW FIRM
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Marc P. Florman (LA # 35128)
mflorman@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

By:/s/ Andrew D. Bizer
        Andrew D. Bizer